STOKER, Judge.
This is an appeal in a suit for reformation of two acts of sale of land. The plaintiffs-appellants contend that the two instruments should be reformed to reflect a reservation of mineral rights. This action is an interfamily suit involving the mineral rights to two small tracts of land. The parties and their father partitioned the succession of their mother. From two larger tracts which were not part of the succession the plaintiffs-appellants conveyed to the defendant two small tracts of land, one of four acres and one of one acre. The larger tracts were donated to the plaintiffs and defendant by their father and their mother prior to the mother’s death.
The issue in this case is whether the conveyances to the defendant should have contained reservations of the mineral rights. The partition itself is not under attack.
*646 Over the objections of the defendant, the trial court permitted the plaintiffs-appellants to introduce parol evidence in an effort to prove that the parties intended to convey the two small tracts with a reservation of the minerals. After trial the trial court ruled in favor of the defendant and rejected the demands of the plaintiffs for a reformation of the two acts.
FACTS
The plaintiffs are Dr. Joseph B. Hargro-der, Earl Hargroder, Jr. and Irma Hargro-der Gremillion who are brothers and sister. They sued their brother, Dr. Howard H. Hargroder. Within a year prior to her death, the mother of these parties, Mrs. Earl Hargroder, Sr., and her husband, donated two tracts of land to the children (the four parties to this suit). One was a tract of 84 acres on which a catfish pond was located; the other tract contained 160 acres on which was situated an irrigation water well. On April 26, 1974, the father and the four surviving children voluntarily partitioned a number of properties, movable and immovable, which comprised the succession of their mother. The father’s interest was one-half (presumably his community interest). The children owned a one-twelfth interest each (presumably a one-fourth interest each in their mother’s community interest). The father of the parties is not involved in this present controversy.
In working out the division of property for partition it was decided that the four children would each retain a one-fourth undivided interest in the mineral rights in the aggregate of immovable property which was partitioned among them. The partition agreement, Exhibit P — 1, reflects this reservation. Plaintiffs through this reformation action do not seek to alter the partition agreement in any way.
On the night of April 26,1979, the parties met with their attorney in connection with working out the partition. Apparently the meeting lasted several hours. The details of the partition agreement were worked out including an agreement that the four children would each retain an undivided interest in all of the mineral rights pertaining to all of the immovable property partitioned among themselves. It was also agreed that the defendant, Howard H. Hargroder, should be permitted to have out of the property not involved in the succession the four-acre tract containing the catfish pond and the one-acre tract which contained the irrigation water well. As noted, this property was not involved in the partition because it had already been donated to the four children by the mother and father prior to the mother’s death. On the same day as the partition, April 26, 1979, an act of sale was signed by Earl Hargroder, Sr., Earl Hargroder, Jr., Joseph B. Hargroder, and Irma H. Gremillion conveying to Howard H. Hargroder the four acres for a consideration of $10.00 “plus other valuable consideration”.[1]
On June 29,1979, Earl Hargroder, Jr. and Joseph B. Hargroder, and Irma H. Gremil-lion conveyed to Howard H. Hargroder the water well in question together with one square acre of land surrounding it to be taken from the 160 acres.[2] The recited consideration for the sale was $12,000.00.
The parties are in agreement that the $10.00 for the four acres was néver paid and *647 that the “valuable consideration” consisted of certain personal property of the mother which Howard H. Hargroder conveyed to his two brothers and sister. The parties agree that the $12,000.00 cash was paid for the water well and one acre.
The two acts of sale did not contain reservations of mineral rights. At some later time the three plaintiffs contended that the two conveyances were a part of the total agreement involved in the partition and that it was intended that a reservation of mineral rights be included in the two sales in the same manner as was included in the partition. The defendant denied there was any such intention. The essence of this law suit is a determination of whether there was any such intention in order to determine whether the two acts of sale should be reformed.
At trial Dr. Howard H. Hargroder testified on cross examination and on direct examination. Also, Dr. Joseph B. Hargro-der testified, and it was stipulated that his brother Earl Hargroder, Jr., and his sister, Irma Hargroder Gremillion, would testify substantially as he did. In addition, the attorney who handled the succession and the two sales testified. The attorney had no recollection of any discussions concerning a reservation of minerals under the one acre and four acre tracts. It appears that after the conference of several hours he dictated the substance of what had been agreed upon into a tape recorder and that this was later transcribed. The transcription makes no mention of any agreement to reserve minerals under the two small tracts conveyed to defendant.
Dr. Howard H. Hargroder denies that there was ever any intention for a reservation of minerals to affect the two parcels of land he purchased. Dr. Joseph B. Hargro-der testified that although there was no specific discussion of the matter, that the nature of the discussions in general was such that it was certainly the intent of himself and his brother and sister that the reservation be made. His testimony was that the sale was simply a part and parcel of the total partition transaction. He contends that the reason for the device of the acts of sale was because the attorney had essentially worked out the partition, and the attorney suggested that it would be simpler to handle the transfer of the two small tracts through the two acts of sale. Hence, Dr. Joseph B. Hargroder reasons that it was intended that the two sales actually be a part of the partition arrangement.
INTERPRETATION OF INTENT
The parties appear to be in general agreement as to the law which governs this case. The plaintiffs bear the burden of proving that an error or mistake was made in confecting the two acts of sale. The proof required to justify reformation must be of the strongest possible type.[3] The question for determination is factual — one of intent. Even considering the parol evidence admitted subject to defendant’s objections, plaintiffs-appellants have failed to carry their burden of proof.
It is quite possible to conclude that obtaining defendant’s agreement to the partition may have been contingent upon an agreement that he receive or be permitted to buy the four acres containing the pond. Defendant admitted that the transfer of the four acres on the same night that the partition was agreed to and signed was “tied in with the partition”. Tr. 63. However, this admission does not carry with it the implication that the parties were to include in the conveyance a reservation of the mineral rights, one-fourth to each party, in the same manner as was done in the partition agreement.
A careful reading of the testimony convinces us that plaintiffs-appellants have not borne the burden of proof in this case.
For the foregoing reasons the judgment of the trial court is affirmed. The costs of *648 this appeal are assessed to plaintiffs-appellants.
AFFIRMED.

. The property in question is described more particularly as follows:
“The catfish pond and its adjacent levy surrounding same located in Section 8, Township 7 South, Range 2 East and being a portion of the 84 acre tract of land acquired by Vendors and Vendee by Act of Donation from Earl Hargroder Sr. and Irma Cannon Hargroder dated September 22, 1976, and being more particularly described as consisting of approximately Four acres, more or less, and being located in the South East comer of said 84 acre tract of land.”

. The property in question is described more particularly as follows:
“The water well together with one (1) square acre of land surrounding said water well, and being a portion of the 160 acres and improvements situated thereon being located in the Northeast Quarter in Section 16, T-7-S, R-2-E, Acadia Parish, Louisiana, which said 160 acres and improvements were acquired by all of Appearers as per an Act of Donation from Mr. and Mrs. Earl Hargroder, Sr., dated December 30, 1974.”

. Adair v. Compton, 360 So.2d 532 (La.App. 2nd Cir. 1978); United Gas Pipeline Co. v. Singleton, 241 So.2d 93 (La.App. 3rd Cir. 1970), writ denied 257 La. 457, 242 So.2d 578, 579 (La.1971); and Starns v. Ducote, 254 So.2d 301 (La.App. 3rd Cir. 1971).