442 So.2d 1361 (1983)
Leo Francis WHITNEY, Jr., Plaintiff-Appellant,
v.
William Roy MALLET, Jr., et al., Defendant-Appellees.
No. 83-418.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
*1362 Hank Seldon Hannah, Lafayette, for plaintiff-appellant.
Onebane, Donahoe, Bernard, Torian, Diaz, McNamara & Abell, James L. Pate, Lafayette, Taylor & Trosclair, Frank P. Trosclair, Jr., Opelousas, A. Octave Pavy, Opelousas, for Emile C. Rolfs, III, Baton Rouge, for defendant-appellee.
Before CUTRER, DOUCET and LABORDE, JJ.
DOUCET, Judge.
Leo Francis Whitney, Jr. filed suit against the City of Opelousas, Sheriff Howard Zerangue and their respective insurers, and officers Keith Savant and Roy Mallet. Plaintiff alleged that in the early morning hours of January 10, 1982, while drinking at a bar in St. Landry Parish, known as "Toby's", he was beaten by officers Savant and Mallet and that said actions were committed under color of state law, within the meaning of 42 U.S.C. § 1983, et seq. The City of Opelousas moved the trial court for summary judgment on the basis that Savant and Mallet were not acting in the course and scope of their employment with the City and that their actions were not committed under color of state law. Mallet was also employed by the St. Landry Parish Sheriff's Dept., thus the department and its insurer filed a Motion for Summary Judgment on the same grounds. The trial court agreed with the movants and granted summary judgment in their favor. Plaintiff appeals.
The depositions filed in the record indicate Keith Savant was employed by the City of Opelousas as a patrolman approximately five (5) years ago and on the night in question, he had gotten off work at 6:00 P.M. Savant testified that he had a date on the night in question and had gone to "Toby's" bar around 9:30 P.M. The lounge is located outside city limits. Savant testified that at no time during the evening did he ever identify himself as a police officer, nor did he threaten plaintiff with arrest.
His companion for the evening was William Roy Mallet, Assistant Chief of Police for the City of Opelousas, and a Deputy Sheriff under Howard Zerangue. Mallet was also accompanied by a female friend. *1363 Mallet disclaimed ever acting in his capacity as a law enforcement officer and denied acting under color of state law. Neither Mallet nor Savant was in uniform.
Prior to January 10, 1982, defendants Mallet and Savant were strangers to Leo Whitney. Sometime during the course of the early morning hours, the plaintiff, Leo Francis Whitney, came to the bar to have a drink. He initiated contact by dancing with Mr. Savant's date. Mallet and Savant were apparently under the mistaken belief that plaintiff was a private investigator hired by Mallet's estranged wife to spy on him for the purpose of obtaining evidence in connection with anticipated divorce litigation. There apparently were several exchanges of words and the plaintiff decided to leave the establishment. Upon walking outside the front door to "Toby's", the plaintiff was accosted by Savant who proceeded to engage in a fight with the plaintiff, both falling to the ground and continuing the struggle. While Whitney and Savant were on the ground, Mallet came out of "Toby's" and interjected himself into the fight. Mallet tapped Savant on the shoulder and Savant, who was then on top of Whitney, stood up allowing Mallet access to Whitney who was laying on the ground. Mallet proceeded to strike Whitney several times and beat Whitney's head against the pavement.
Mallet testified that he was employed in two capacities at the time of the fight: he was Asst. Chief of the Opelousas Police Dept. and a narcotics detective for the Sheriff's Dept. He worked approximately 40 hours a week in the first capacity and about 44 hours a week in the latter. Mallet further testified that, as a matter of policy, "a police officer is a police officer twenty-four (24) hours a day." However, he noted that the incident occurred outside city limits and, therefore, he felt this policy would not apply. Mallet also felt the Sheriff Department's policy would be the same and would apply except that when he is drinking he would not act as a police officer.
In granting the Motions for Summary Judgment the trial court observed that both officers were off duty, out of uniform and each denied any use of police authority. In his Reasons for Judgment the trial judge noted:
"The best evidence the plaintiff could adduce was his own testimony on Page 19 of the criminal transcript:
`Q. When he grabbed you by the vest did he say anything?
A. He pushed me like that and he said, "Hey, mother fucker, let me tell you, you should know better than to come down here and mess with the law.'
And, the testimony of Andrew Frank, Jr., at page 71 of the criminal transcript, wherein he testified Mallet said:
`I don't want you messing with my men.'"
The court further noted that plaintiff was not aware of the fact either defendant was a law enforcement officer and there is doubt whether the above statements enlightened him as to their status. Neither defendant threatened the plaintiff with actual arrest. The trial judge concluded that all activity was on a personal basis and not on an official basis.
From that judgment, plaintiff appeals assigning the following specification of error:
The trial court erred in concluding that there existed no genuine issue of material fact with regard to whether or not Mallet and Savant were acting under color of state law at the time of the battery and further erroneously construed the law applicable to the case.
Every person who, under color of state law, causes another to be deprived of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. § 1983. A physical attack and/or battery by a person, such as a police officer, acting under color of state law comes clearly within the statutory language of 42 U.S.C.A. § 1983. Hardwick v. Hurley, 289 F.2d 529 (7th Cir.1961); Hamilton v. Chaffin, 506 F.2d 904 (5th Cir. 1975). This court must decide if there is a *1364 genuine issue of material fact with regard to whether or not Savant and/or Mallet were acting under color of state law at the time of the battery upon the plaintiff.
Acts of police officers who undertake to perform their official duties are included within the meaning of 42 U.S.C.A. Section 1983, whether they hew to the line of their authority or overstep it. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. Johnson v. Hackett, 284 F.Supp. 933 (1968); Robinson v. Davis, 447 F.2d 753 (4th Cir. 1971).
In Stengel v. Belcher, 522 F.2d 438 (6th Cir.1975), a case factually similar to the present case, the defendant Belcher was an employee of the Columbus, Ohio, City Police Department. The suit arose out of an incident which occurred in a local cafe at 1:30 a.m. when Belcher, an off-duty policeman, shot and killed two men and paralyzed a third. A fight had broken out in the cafe between two individuals and Belcher, without identifying himself as a police officer at any time, involved himself in the altercation. At some point during the conflict, Belcher produced a pistol and shot three individuals in the cafe. A jury found that under the circumstances Belcher was acting under color of state law. On appeal to the United States Court of Appeals, 6th Circuit, Belcher contended that his actions were taken as a private citizen, and, in support of that argument, pointed to the facts that he was engaged in private social activity, was out of uniform and off duty and never identified himself as a police officer. The court, in concluding that Belcher did act under color of state law, stated that the fact that a police officer is on or off duty, or in or out of uniform is not controlling. Dwight Joseph, who was Chief of Police at the time of the incident, testified that a police officer was required to take action in any type of police or criminal activity twenty-four (24) hours a day. The court stated that it appeared that Belcher, as a police officer, used poor judgment and employed excessive force. Nevertheless, the court upheld the jury finding that Belcher had, in fact, acted under color of state law when he interjected himself into the conflict at the cafe.
The factual situation before this court closely parallels the factual context of the Belcher case, although the degree of force used in the present case was not as great. From the deposition of Roy Mallet it is clear that: (1) Mallet was employed both by the City of Opelousas Police Department and the Sheriff of St. Landry Parish at the time of the incident; (2) Mallet was ostensibly out of uniform and off duty at the time of the incident at "Toby's"; (3) Mallet was ostensibly engaged in private social activity at the time of the incident; (4) Mallet never clearly identified himself as a police officer; (5) Mallet candidly admitted that a police officer is on duty twenty-four (24) hours a day; (6) Mallet came upon a fight between two individuals and immediately interjected himself into the fight and committed a battery on the plaintiff; and (7) Mallet admitted that he used poor judgment. In addition, the plaintiff, testified that Savant threatened him, stating "... you should know better than to come down here and mess with the law."
Facts distinguishing Belcher from the present case include the fact Officer Belcher was equipped with a can of mace and a .32 caliber revolver that police regulations required that he carry at all times. The 6th Circuit indicated that other material facts led to its decision and stated:
"There was other evidence which permitted an inference that Belcher, although he overstepped his bounds, intervened in the dispute pursuant to a duty imposed by police department regulations."
In fact, the chief of police testified that Belcher was subject to disciplinary action if he failed to take any action in a criminal situation and that Belcher had in fact acted under authority of such regulations.
The "other evidence" referred to by the 6th Circuit was addressed in the same case *1365 under writ of certiorari to the United States Supreme Court in Belcher v. Stengel, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976). The U.S. Supreme Court concluded that the writ for certiorari had been improvidently granted. The Court stated that in addition to the evidence concerning the department's regulations, the police officer had been awarded workmen's compensation benefits for the injuries he received in the affray, on the ground that the injuries had been incurred in the course and scope of his employment; that after the affray, the police officer had been granted official leave on account of injuries received "in the line of duty under circumstances relating to police duties"; and, that a board of inquiry had convened to investigate the barroom episode and had determined that the petitioner's actions were in the line of duty. Further, police officer Belcher testified that he intended to arrest two of the people involved in the fracas at the time he stood up to intervene in same; that he intervened by using a can of mace issued to him by the police department; and, that he was acting pursuant to a police regulation which required his intervention in any disturbance of the peace.
Merely because one is a police officer does not mean his conduct, no matter how outrageous, is actionable under Section 1983. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 1168, 47 L.Ed.2d 405 (1976). It is the nature of the act which must be scrutinized and the action must be committed in the performance of an actual or pretended duty. See: Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); and Johnson v. Hackett, 284 F.Supp. 933 (1968). See also: Sims v. Adams, 537 F.2d 829 (5th Cir.1976); Aulds v. Foster, 484 F.2d 945 (5th Cir.1973); and Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978).
Appellees emphasize that Mallet and Savant were outside their jurisdiction as city police officers. They claim they were not intending to act as city police officers, nor did they make any overtures to the plaintiff that led him to believe they were police officers. Neither officer was uniformed or carried identification, identifying themselves as city police officers, nor did they attempt to place the appellant under arrest.
In Delcambre v. Delcambre, 635 F.2d 407 (5th Cir.1981), the Chief of Police for the Town of Delcambre, was sued under Section 1983 for an assault which occurred on the premises of the city police station, and while the Chief was on duty. The altercation arose out of an argument over family and politics and the plaintiff was not arrested, nor threatened with an arrest. The 5th Circuit Court of Appeal found that the trial judge was correct in dismissing the claim against the City and the Chief of Police, as the Chief of Police was not acting under color of state law. Although the Chief was on duty and the altercation occurred on the premises of the police station, the nature of the act was found to be personal.
To prevail under 42 U.S.C. § 1983, the appellant must show that Savant and Mallet acted under color of state law and that the City of Opelousas has a policy or custom, official or unofficial, to deprive citizens of their constitutional rights. In Monell v. Depart. of Social Serv. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the court, while recognizing that Section 1983 authorizes suits against municipalities, held that a municipality cannot be held liable solely on the basis of respondeat superior under Section 1983. State action is not required under Section 1983; action "under color of state constitutional right" satisfies the "color of law" requirement. 23 VAND.L.REV. 1341 (1970).
One who moves for summary judgment has the burden of demonstrating clearly the absence of genuine issue of fact and any doubt as to the existence of such an issue is resolved against the mover. Hoffman v. Partridge, 172 F.2d 275 (D.C. Cir.1949). In a Section 1983 action, as in others, inferences to be drawn from underlying facts contained in moving party's materials must be viewed in a light most favorable to the party opposing the motion. *1366 Adickes v. S.H. Kress and Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavit show no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. art. 966. Papers supporting the position of the party moving for summary judgment are to be closely scrutinized, while the opposing papers are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981). A summary judgment is not appropriate when it is based upon affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Mecom v. Mobil Oil Corporation, 299 So.2d 380 (La.App. 3rd Cir.1974), writ ref. 302 So.2d 308 (La.1974), Fontenot v. Aetna Insurance Co., 225 So.2d 648 (La.App. 3rd Cir.1969). Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be resolved in favor of a trial on the merits. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976); Kay v. Carter, 243 La.1095, 150 So.2d 27 (1963); Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir.1980).
Nor is summary judgment appropriate as a vehicle for the disposition of a case, the ultimate decision in which will be based on opinion evidence or the judicial determination of subjective facts. Butler v. Travelers Insurance Co., 233 So.2d 271 (La.App. 1st Cir.1970); Smith v. Preferred Risk Mutual Ins. Co., 185 So.2d 857 (La. App. 3rd Cir.1966).
Our review of the factual allegations as well as the material found in the affidavits and depositions persuades us that, resolving all doubts against the movants, a genuine issue of material fact exists as to whether Savant and Mallet were acting under "color of law" within the context of Section 1983. Accordingly, we resolve these doubts in favor of trial on the merits. Cates v. Beauregard Electric Cooperative, Inc., supra.
For the reasons assigned hereinabove, the judgment of the trial court is reversed and the case is remanded. Costs of this appeal are assessed against the movants, to be divided equally.
REVERSED AND REMANDED.